UNION STOCKYARDS BANK OF WICHITA, KAN., v. HAMILTON et al.

(Circuit Court of Appeals, Sixth Circuit. November 15, 1917.)

No. 3015.

1. COURTS ☞366(1)—PRECEDENTS—FEDERAL COURTS.

The construction of a state statute by the highest court of a state is a binding precedent, which will be followed by the federal courts.

2. CHATTEL MORTGAGES ☞90—REGISTRATION—"TRUE" COPY.

Under Gen. St. Kan. 1909, § 5224, declaring that every chattel mortgage or conveyance intended to operate as such, which shall not be accompanied by an immediate delivery and followed by an actual and continued change of possession of the thing mortgaged, shall be absolutely void as against the creditors of the mortgagor and subsequent purchasers and mortgagees in good faith, unless the mortgage or a true copy thereof shall be forthwith deposited in the office of the register of deeds in the county where the property is at the time, a copy of a mortgage of cattle, which described the animals as 74 head of coming two year old native steers, 90 per cent. red, balance mixed colors, average weight about 680 pounds, branded W on right hip, which omitted the letter W, though reciting that they were branded on the right hip, is a true copy of the mortgage, the expression not requiring a literal copy, but one substantially true, and, where duly deposited with the register of deeds, will give the mortgagee priority over subsequent purchasers in good faith, the description of the copy being sufficient to enable an indentification of the cattle.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, True.]

3. CHATTEL MORTGAGES ☞282—FINDINGS—INCONSISTENT FINDINGS.

In a suit by a chattel mortgagee of cattle to enforce the mortgage against a purchaser of the cattle, the lower courts found that the cattle covered by the mortgage were branded, that they were kept together and separate from other herds until driven to a railroad station for shipment to the point where purchased by defendants, that they became mixed with other cattle before shipment, and probably further mixed after reaching the yards, and that only six of the cattle embraced in the complainant's mortgage and branded were among the cattle bought and shipped by defendants. Held, that there was no inconsistency in the findings, and complainant, being entitled to recover, could recover from defendants only for the value of such six cattle.

Appeal from the District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

Suit by the Union Stockyards Bank of Wichita, Kan., against Fred Hamilton and others. From a decree for defendants, complainant

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

appeals. In part affirmed, and in part reversed, and decree entered for complainant.

The opinion of the trial court is as follows:

The plaintiff, under date of November 11, 1914, took the note of Roy E. Westbrook for $3,265.25, due at four months, with a clause for the precipitation of its maturity under certain conditions which have arisen. Payment of the note was secured by a mortgage on 74 head of cattle described in that instrument, and which were then in Westbrook's possession. Subsequently they were moved from place to place in Kansas, until at last they reached Peabody, in that state, whence, late in December, 1914, they with other cattle of Westbrook, or of one Fawley, were shipped to Kansas City, Mo., for sale in the open market there. As clearly shown by plaintiff's witnesses, Westbrook, Jeorg, and Gray, the 74 head had been kept separately from others, but when they reached the railroad station at Peabody, Kan., for shipment to Kansas City, they were mixed with other cattle of Westbrook or Fawley. It is by no means certain that there was not a further mixing up with other cattle at the yards in Kansas City. The 74 head had all been branded with the letter W on the right hip, while those with which they were mixed were either variously branded or not branded at all. One hundred and seventy-five head of cattle were purchased by defendants from commission houses in the open market in Kansas City on December 28, 1914, and were shipped thence to Owensboro, Ky., where they reached the defendant on December 30, 1914, and were then all paid for.

On January 15, 1915, this action in equity was brought by complainant, which claims that among the 175 head of cattle thus bought by defendants and shipped to them were the 74 head covered by the mortgage Westbrook had given to plaintiff, and recovery of their value by the mortgagee is sought upon that ground. It is alleged by the complainant in its bill that the mortgage was duly executed and duly recorded in the proper county and office in Kansas. The defendant's answer has controverted the material averments of the bill, thus putting upon complainant the burden of proving them. The principal questions to be considered grow, first, out of certain requirements of the laws of the state of Kansas, which phase of the case will be treated more in detail further along; second, out of the plaintiff's claim that 74 head of the cattle bought by the defendants were those which are covered by the mortgage; third, out of the claims by the defendants that they purchased in good faith 175 cattle in the open market for value then paid, that none of the cattle thus purchased were covered by the mortgage, and that no one of the defendants had any knowledge of the mortgage until about a week before this action was brought, nor had either of them any notice either actual or constructive of the mortgage; and fourth, out of the two other defenses made by defendants, to wit: (a) That the plaintiff's debt had been paid; and (b) that the plaintiff, by consenting that Westbrook might remove the cattle from the state of Kansas and sell them in the open market in another state, has estopped itself from asserting its claim against the defendants.

We think it quite unnecessary to notice further either the question of the payment of the debt or that of the alleged estoppel, inasmuch as we think there is no adequate testimony to support either of those defenses. The other questions involved have received our careful consideration after reading the diffuse and needlessly extensive testimony offered. Reduced to its essential features, we find that the testimony clearly establishes the following facts:

(1) That the 74 cattle covered by the mortgage were each and all branded on the right hip with the letter W, and not otherwise.

(2) That they were kept together, and separate from other herds, until about December 26, 1914, when, after being driven to the railroad station in Peabody, Kan., for shipment to Kansas City, Mo., they became mixed with other cattle before shipment, and probably further mixed with others after reaching the cattle yards in that city, and that, while so mixed with other cattle, the 74 head claimed by plaintiff to have been included in the 175 bought by defendants were bought by the latter and carried to Owensboro, Ky.

(3) That only 6 of the 74 head embraced in plaintiff's mortgage and branded

on the right hip with the letter W were among the cattle bought and shipped by the defendants.

(4) That the value of the 6 was $360.

(5) That at the time of the purchase neither of the defendants had any knowledge of the plaintiff's mortgage, nor had either of them, at or before that time, any actual notice thereof, nor any constructive notice thereof, unless the plaintiff's mortgage had previously been duly and properly recorded in Kansas in such manner as the laws of that state require in order to bind innocent purchasers in good faith, without notice.

(6) That the defendant paid full value for the cattle purchased by them in the open market, and were innocent purchasers thereof in good faith and for value.

It will be seen that the question of the right to recover the $360, value of the 6 head of cattle embraced in the mortgage, will depend upon the law of Kansas. The contracts, including, the mortgage between the plaintiff and Westbrook, were made in the state of Kansas, and must, of course, be considered with reference to the law of that state. The statutory provision about to be quoted must be construed according to any decisions of the Supreme Court of Kansas bearing upon the present case. These general propositions are perfectly well settled and understood.

The Kansas statute (Gen. St. 1909, § 5224) is as follows: "Every mortgage or conveyance intended to operate as a mortgage of personal property, which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage or a true copy thereof shall be forthwith deposited in the office of the register of deeds, in the county where the property shall then be situated, or if the mortgagor be a resident of this state, then of the county of which he shall at the time be a resident."

The mortgage describes the cattle in this language: "Seventy-four (74) head of coming two (2) year old native steers. Ninety per cent. (90%) are reds; balance, mixed colors. Average weight 680 pounds. Branded W on right hip. All the above described cattle are now located on the northwest quarter of section 16, township 22, range 4 east, in Peabody township, Marion county, Kansas, where they are to remain during the life of this loan."

The copy of the mortgage filed in the office of the register of deeds of Marion county, Kansas, and which filing of a copy is the Kansas mode of recording such instruments, describes the cattle thus: "Seventy-four (74) head of coming two (2) year old native steers. Ninety per cent. (90%) are red; balance, mixed colors. Average weight 680 pounds. Branded on right hip. All of the above described cattle are now located on the northwest quarter of section 16, township 22, range 4 east, in Peabody township, Marion county, Kansas, where they are to remain during the life of this loan."

The copy of the mortgage filed being otherwise correct, the question is whether the latter is a "true copy" of the former—in other words, was the omission of the letter "W," used in connection with the word "Brand," a material omission, in view of the clause of the statute providing that (not merely a copy but) a "true copy" shall be filed in the office of the recorder of deeds in order that the mortgage shall be valid against a subsequent purchaser in good faith. The question, being whether the copy filed in this instance met the requirements of the law of Kansas, was ably argued, and many cases were cited to which we have no access, as the citations were not from official reports. Prominent among the authorities cited were Mills v. Kansas Lumber Co., 26 Kan. 575, Cattle Co. v. McLain, 42 Kan. 680, 22 Pac. 728, and Central National Bank v. Brecheisen, 65 Kan. 807, 70 Pac. 895.

In the first of these cases no allusion is made to the statute we are considering, there was no question as to the accuracy of the copy of the mortgage filed with the register, and consequently no construction of the statute was made. It was "an action of replevin," and the question discussed was the identity of the property sought to be recovered and the testimony heard thereon. The second case was also an action of replevin, and what we have said of the

first is almost equally applicable to the second. Neither affords present help. The third case was also an action of replevin, but one issue made was whether a true copy of the chattel mortgage on live stock had been deposited with the register of deeds in compliance with the Kansas statute. The original mortgage described the location of the property as follows: "Said cattle to be kept and fed on the Brecheisen farm, viz., southeast quarter of section 34, township 16, range 16, in Valley Brook township, Orange county, Kansas." The copy described the location in similar terms, except that it gave the township and range as number 11, instead of 16, as in the original. There was no range or township numbered 16 in Orange county. The court below rejected the copy as not a true copy, and this was held to be an error upon the ground that "without the township and range, the remainder of the description was sufficient to *identify the location* of the mortgaged property." (Italics ours.)

Undoubtedly the mistake as to the mere locality where the cattle were herded might well be regarded as "immaterial," because there was a plain and open way to find that locality and the cattle thereon in spite of the error, and from the court's opinion we get the teaching that "the use of the words 'true copy' in the statute relative to the recording of chattel mortgages does not require that a literal and verbatim copy of the instrument must be filed, but a copy substantially true, so that creditors of the mortgagor or subsequent purchasers in good faith may not be misled to their detriment." The substitution of the "11" for "16" in the copy in that case was not regarded as a material error under the facts there disclosed. The court held that it is not essential to a true copy that it shall be a literal copy. The mere misspelling of an ordinary word in the copy does not nullify the mortgage. So it was ruled that a copy "substantially" true is all that is required, doubtless meaning that, if the copy accurately covers the "substantial" things agreed to in the mortgage, it will suffice, and we gather from the opinion that it was the court's construction of the statute that, if the copy contained the "substantial" and "material" things, it would protect the mortgagee. While this is true, the Supreme Court of Kansas had not instructed us *how* always to determine what *is a substantial and material* error in the copy. It did not there supply the want we feel in this case. Consequently we are left to determine for ourselves the question now presented, and to do so in the way that strikes us as being right. In our case the error was not in giving the *place* where the cattle could be *found*, but in giving the brand by which they could *severally* be identified, whether found at the *place* named in the mortgage or elsewhere. The brand made definite and certain what, without it, would be doubtful and uncertain.

Many illustrative cases have been cited. A rule very applicable to this case is given in Ely v. Carnley, 19 N. Y. 497, where it is said: "It is important to creditors to know the amount of liens as well as their existence. Hence the act requires the filing of the instrument or of a true copy. A compliance with the act will give the creditor full information as to the property mortgaged, the amount of the debt or condition of the mortgage, and to what extent the property can be made available for the payment of his debt. When the paper filed fails to accomplish these purposes, it falls short of the requirement of the statute. In this case the paper filed did not show the amount of the debt. The referee, therefore, correctly held that it was not a true copy. The defendant's counsel insists that, as it was a mistake of the copyist and there was no fraud intended, the error in the copy should be disregarded. The statute will not permit such a construction. When a judgment creditor claims the property in hostility to the mortgages, the inquiry is: Has the mortgagee complied with the statute? If not, the statute makes his mortgage void. The cause of the omission is wholly immaterial, whether by accident or design. Any other rule would destroy the protection the Legislature intended to secure by the act. A trifling mistake in the copy filed might not vitiate, upon the principle that the law will not regard trifles. But the objects of the statute must be regarded, and any attempt at compliance, not attaining those, held a nullity."

In Johnson v. Des Moines Life Ass'n, 105 Iowa, 273, 75 N. W. 101, the court said: "It must be so exact and accurate as that, upon comparison, it can be

said to be a true copy, without resorting to construction. If, upon comparison, it may be said that the copy is conformable to the facts, and in accordance with the actual state of things appearing in the original, then it may be said to be a true copy; but if the differences are such that construction must be resorted to, to determine whether the meaning and proper effect of the copy are the same as the original, then it cannot be said to be a true copy."

The Kansas statute intended in the first place to protect the mortgagee, and did this by giving him leave, when taking a mortgage (which, of course, was of itself good between him and his debtor), if he wanted it to protect himself against creditors of the mortgagor or subsequent purchasers in good faith, to file a "true copy" thereof in the office of the register of deeds. If a mortgagee wants the benefit of the statute, he must comply with its conditions. The duty is upon him, because he is the only person who can or should do it, as he is the one to be benefited. In that way he can save himself. If he neglects it, he, and not the innocent purchaser, loses by his carelessness.

Here the subject of the mortgage was a herd of red native cattle, about two years old. Under such conditions all red two year old cattle will look pretty much alike. If they remain separate from other cattle in a given locality or field, they can be easily identified by that fact; but they may be moved about or be sent to market or other locality, and thus comes the need of care. It has no doubt been the judgment of cattlemen generally that branding is the best and most reliable means of identification, for a long period if the brand is in the skin, and for a shorter time if on the hair. Brands are as various as the taste of the men who have them put on. Here the brand was the letter W, and it was put upon the right hip of each one of the 74 cattle covered by the mortgage. The place where the cattle were located was described in the mortgage. In general terms, the age, weight, and color of the cattle were stated; but these terms were general, and might be equally as well applied to thousands of other similar cattle. The specific and really the distinguishing mark upon these cattle was the brand in the form of W on the right hip. The other characteristics of age, weight, and color might be applied promiscuously, and might change; but the brand was specific and distinguishing. If one man had taken the original mortgage, and another had taken the copy left with the recorder, and had separately gone to the cattle after they had been removed from the locality named in the mortgage and mixed with others, would they have equal chances to select and accurately identify the 74 head? is a most important inquiry. Let this supposition follow the cattle to Kansas City; would not the purchaser with the copy have selected just as readily cattle with any sort of brand on the right hip, especially if they looked better? He certainly would have nothing to lead him to the cattle with the W on the right hip, any more than he would have to lead him to the miscellaneous lot of brands on the right hip of the cattle when they go to market. Hence his means of identification would be imperfect, and would lead to the detriment of the purchaser.

We think these suggestions clearly demonstrate that the brand W on the right hip, as stated in the mortgage, was a substantial and material part of the description, and that the omission of the W from the copy of the mortgage rendered it not a true copy within the meaning of the Kansas statute. It was clearly calculated to mislead. We think the following sentence in the brief of defendant's counsel is very suggestive. He says: "At the outset, it will be seen that the copy is ambiguous. From the failure to fill the blank space left for the brand, one might naturally infer that no brand was intended. On the other hand, one might conclude, from the fact that this space was left blank, that the parties meant to convey the idea that the cattle *were* branded on the right hip, but that there was a variety of brands, and that they did not, for this or other reason, intend to describe the particular kinds of brands."

If the mortgagee would protect himself, he must at his peril see to it that at least a substantially accurate copy is left with the recorder—that is to say, a copy from which nothing material or substantial is omitted. When the mortgagee has done that he is safe. Otherwise (as all cattle are likely to be sold) innocent purchasers in good faith might be deceived, as in this case they would have been, had they looked at the copy only. They could not, with the

copy only, have looked over the 150 cattle of Westbrook or Fawley at Peabody, and have picked out those that were mortgaged, when seeing, as they would, various brands on the right hip on other cattle in the bunch. Still more difficult might it have been if picking them out had been attempted at Kansas City.

After very careful study of the subject, we have concluded, first, that none but 6 of the cattle claimed were covered by complainant's mortgage; and, second, that as the so-called copy of that instrument filed with the register of deeds was not a "true copy," within the language, meaning, and purpose of the statute, the defendants, who are innocent purchasers in good faith and for value of the 6 cattle last referred to, occupy a better position than does the plaintiff, which owed it to itself to see that the copy was accurate if it desired to be protected against such purchasers. As to the defendants, the mortgage is void under the law of Kansas.

We have not gone into the question of the conspiracy alleged against Westbrook, Fawley, and others, but we are not at all sure that they stand in any better attitude than that imputed to them. If plaintiff was swindled in this instance, they did the job.

It results that the bill should be dismissed, with costs.

E. B. Anderson, of Owensboro, Ky., for appellant.
W. P. Sandidge, of Owensboro, Ky., for appellees.

Before KNAPPEN and DENISON, Circuit Judges, and McCALL, District Judge.

McCALL, District Judge. This is a suit in equity to enforce a chattel mortgage. The court below denied the relief prayed and dismissed the bill, and the defendants appealed. Several errors are assigned, but only two were urged at the hearing. One presents a question of law, the other a question of fact. We shall consider them in the order stated.

The question of law arises on the construction of section 5224, chapter 82, article 2, of the General Statutes of Kansas of 1909, which is as follows:

"Every mortgage or conveyance intended to operate as a mortgage of personal property, which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage or a true copy thereof shall be forthwith deposited in the office of the register of deeds in the county where the property shall then be situated, or if the mortgagor be a resident of this state, then of the county of which he shall at the time be a resident."

We are concerned now only with the words "a true copy thereof." The Supreme Court of Kansas, in the case of Central National Bank of Topeka v. Brecheisen, 65 Kan. 807, 70 Pac. 895 (a case very similar to the present one), in considering the statute in question said:

"The use of the words 'true copy' in the statute relative to the recording of chattel mortgages does not require that a literal and verbatim copy of the instrument must be filed, but *a copy substantially true,* so that creditors of the mortgagees or subsequent purchasers in good faith may not be misled to their detriment." (Italics ours.)

And the court held that the copy of the instrument deposited with the register of deeds, which described the live stock covered by the mortgage as being in township 11, range 11, was a substantially true

copy of the original, wherein the stock was described as being in township 16, range 16, and met the requirements of the statute. To like effect are Gillespie v. Brown, 16 Neb. 457, 20 N. W. 632, Payne v. King, 141 Mo. App. 246, 124 S. W. 1066, and National Register Co. v. Slater, 156 Mo. App. 733, 137 S. W. 13, in construing similar statutes in those states.

[1] The construction and interpretation of a statute of a state, made by the highest court of that state is binding on federal courts. Duncan v. McCall, 139 U. S. 449, 11 Sup. Ct. 573, 35 L. Ed. 219; Etheridge v. Sperry, 139 U. S. 266, 11 Sup. Ct. 565, 35 L. Ed. 171; Norton v. Shelby Co., 118 U. S. 425, 6 Sup. Ct. 1121, 30 L. Ed. 178. In so far, therefore, as the construction of section 5224 of the Statutes of Kansas and its application made in Central National Bank v. Brecheisen, 65 Kan. 807, 70 Pac. 895, is applicable here, we must follow it.

[2] The undisputed facts relating to the question now being considered are substantially as follows: On November 11, 1914, one Westbrook executed and delivered to the plaintiff a chattel mortgage, on 74 head of cattle, to secure the payment of a promissory note of even date for $3,265.25, due March 11, 1915. °It carried a clause providing for the precipitation of its maturity under certain conditions which arose. An instrument purporting to be a true copy of the original mortgage was filed with the register of deeds for Marion county, Kan. Westbrook, the mortgagor, resided in, and the cattle mortgaged were in, Marion county. The cattle were described in the original mortgage as follows:

"Seventy-four (74) head of coming two (2) year old native steers. Ninety per cent. (90%) are red, balance mixed colors. Average weight about 680 pounds. Branded W on right hip. All of the above-described cattle are now located on the northwest quarter of section 16, township 22, range 4 east, in Peabody township, Marion county, Kansas, where they are to remain during the life of this loan."

As a part of the description in the original mortgage, it is stated that the cattle were "branded W" on the right hip. In the copy filed with the register of deeds the letter W does not appear, and the sentence reads "branded on the right hip."

Considering in its entirety the description of the cattle in the original, the question arises—is the copy that was filed a substantially true copy of the original, notwithstanding the letter W does not appear therein, "so that creditors of the mortgagor or subsequent purchaser in good faith may not be misled to their detriment?"

The question of "true copy" aside, we think the description given in the copy filed is sufficient to have enabled one of ordinary intelligence and reasonably conversant with the cattle business to have readily found and identified the cattle intended to be covered therein, at the date of its execution, and if the description of the property is sufficient to give notice of the identity of the cattle to one who had actual knowledge of the contents of the mortgage, then it is, when registered, sufficient constructive notice to strangers.

In Gillespie v. Brown, supra, the Supreme Court of Nebraska, in considering a very similar statute, said:

"The evident object and purpose of the statute in requiring a copy to be filed is to give notice of the existence of a mortgage, together with its terms and conditions"

—and this for the information of creditors, purchasers, and lien-holders.

We are of the opinion that the discrepancy was immaterial, and that the instrument filed with the register of deeds was a true copy of the original mortgage within the meaning of the statute. This conclusion leads to the result that the plaintiff is entitled to a decree for the value of all the cattle purchased by the defendants, branded W on the right hip, that were in their possession at the time the suit was brought.

[3] It is alleged in the bill that there were 74 head of cattle so branded, and covered by the mortgage, in the possession of the defendants. This allegation is denied in the answer, and much evidence was taken on the issue. Judge Evans, in his finding of facts, said:

"(1) That the 74 cattle covered by the mortgage were each and all branded on the right hip with the letter W, and not otherwise.

"(2) That they were kept together, and separate from other herds, until about December 26, 1914, when, after being driven to the railroad station in Peabody, Kan., for shipment to Kansas City, Mo., they became mixed with other cattle before shipment, and probably further mixed with others after reaching the cattle yards in that city, and that, while so mixed with other cattle, the 74 head claimed by plaintiff to have been included in the 175 bought by defendants were bought by the latter and carried to Owensboro, Ky.

"(3) That only 6 of the 74 head embraced in plaintiff's mortgage and branded on the right hip with the letter W were among the cattle bought and shipped by the defendants.

"(4) That the value of the 6 was $360."

It is insisted for the plaintiff that the third finding is inconsistent with the findings 1 and 2. We think the finding not fairly subject to this criticism. The court found that the 74 cattle covered by the mortgage were all branded W on the right hip; they became mixed with other cattle, and the 74 head claimed by plaintiff to have been included in the 175 bought by defendant were so bought and carried to Owensboro, Ky., but that, of the 74 so bought by defendants, only 6 in fact were branded W on the right hip.

We agree with the lower court in its finding on this issue, and to this extent the decree below is affirmed; in other respects it is reversed, and a decree will be entered for the plaintiff for $360, the value of the 6 head of cattle, and costs.