(No. 2610. Jan. 5, 1922.)

NATIONS v. LOWENSTERN et al.

### SYLLABUS BY THE COURT

(1) Where a mortgagee elects to file for record a copy of a chattel mortgage, the copy must be substantially ac-

curate, and a copy which shows no signature or acknowledgment does not constitute constructive notice.    P. 617

(2)  The filing of an incomplete copy of a chattel mortgage is not aided by the unauthorized certificate of the clerk that it is a true copy.    P. 619

(3)  An index to chattel mortgage records does not constitute constructive notice of an instrument not entitled to be filed for record.    P. 620

(4)  A mere presentation to the county clerk of an original chattel mortgage and the immediate withdrawal of it without recording or leaving a copy in its stead cannot be a filing within Laws 1915, c. 71, as amended by Laws 1917, cc. 36, 74, even though the clerk puts his file mark upon it; to "file" an instrument being to present it to the proper officer to be kept as an archive of his office.    P. 617

(5)  Laws 1915, c. 71, as amended by Laws 1917, cc. 36, 74, providing that a copy of a chattel mortgage may be filed instead of the original, contemplates a true copy; a "copy" of an instrument being a duplication or reproduction of it.
P. 619

Appeal from District Court, Quay County; Leib, Judge.

Action by J. H. Nations against Hugo Lowenstern and others.  Judgment for defendants, and plaintiff appeals.  Affirmed.

O. P. Easterwood, of Clayton, for appellant.

Renehan & Gilbert, of Santa Fé, for appellees.

OPINION OF THE COURT

DAVIS, J.   This is an action in replevin involving the right of possession of cattle.   Both Nations and Lowenstern base their claim upon chattel mortgages executed by J. P. Airhart, and the question for determination is the priority of these mortgages. The district court held that the Lowenstern mortgage was prior, and from that holding and the judgment rendered accordingly this appeal is prosecuted.

The Lowenstern mortgage was dated April 27, 1918, and recorded April 30, 1918.   Nations relies

upon several mortgages; the last two being dated June 3, 1918, and recorded August 8, 1918. Since these are subsequent to the date and recording of the Lowenstern mortgage, and no question is raised as to the sufficiency of that mortgage in either respect, any rights of Nations superior to it must arise under instruments executed earlier and filed and recorded so as to constitute notice. In determining the facts, the first step therefore is to ascertain the condition of the records as to existing mortgages at the time the Lowenstern mortgage was taken.

On December 1, 1917, J. P. Airhart executed a chattel mortgage to secure a note for $5,874.50. December 5, 1917, Nations sent this mortgage, with a copy, to the county clerk. He did not request that it be recorded, and it was not recorded. The original was returned to him by the clerk; the copy being retained. The copy which remained in the file was not a true one, since it lacked both the signature of the mortgagor and his acknowledgment.

On the same date a similar mortgage was executed to secure $11,207.55, which, with a copy, was also sent to the county clerk for filing December 5, 1917, the original mortgage not being recorded, but returned, and the copy retained in the files. This copy was likewise defective in not showing either a signature or an acknowledgment.

August 7, 1917, another mortgage was executed to secure $12,756.90. Like the two described above, the original was not recorded, and, while the copy sent to the clerk and retained in his files showed the signature of the mortgagor, there was no acknowledgment.

There was a fourth mortgage dated December 14, 1916, but since it had been renewed by, or the note

secured by it included in, one of the mortgages above described, and it is not relied upon in appellant's brief, it needs no further consideration. In passing, however, it may be observed that, like the later ones, it was not recorded, and the copy of it lacked both signature and acknowledgment.

On April 27, 1918, the date of the Lowenstern mortgage, an examination of the office of the county clerk would have disclosed no mortgages of record, and there would have been found three instruments in the form of mortgages, two, however, bearing no signature and no certificate of acknowledgment, and one showing a signature, but not acknowledged. Was this situation sufficient to put Lowenstern on notice of the existence of the actual mortgages? The decision of this case turns upon the solution of this question, for it is conceded that he had no actual knowledge or notice.

The statute governing the matter is chapter 71, Laws 1915, as amended by chapters 36 and 74, Laws 1917. The provisions applicable may be summarized as follows:

Sec. 2. All chattel mortgages shall be acknowledged by the mortgagor in the same manner as conveyances affecting real estate, and shall be filed or recorded as hereinafter required. The failure to so file or record any such instrument shall render it void as to subsequent mortgages in good faith.

Sec. 3. Every chattel mortgage, or a copy thereof, shall be filed in the office of the county clerk of the county in which the property affected is situated.

Sec. 4. The county clerk shall indorse on the mortgage or copy so filed the time of receiving it and retain it in the files of his office. If the instrument is recorded, the mortgagee may withdraw the filed original whenever a true copy thereof is filed with the county clerk.

Sec. 5. The county clerk shall keep a book in which shall be entered a minute of all such instruments, which shall be ruled off into separate columns with headings as follows: Time of Reception, Name of Mortgagor (alphabetically ar-

ranged), Name of Party in Whose Favor the Instrument is Drawn, Date of Instrument, Amount Secured, When Due, Property Mortgaged, and Remarks; and the proper entry shall be made under each of said headings. Under the heading of Property Mortgages it shall be sufficient to enter a general description of the property mortgaged, and the particular place where located, if set forth in such instrument.

Sec. 6. Every such chattel mortgage or other instrument of writing, filed in accordance with the provisions of this act, shall have full force and effect given to the recording of an instrument affecting real estate.

Sec. 9. The county clerk may charge and collect for certifying a copy of any such original chattel mortgage or other instrument of writing so filed or recorded, the sum of twenty-five cents and no more, where such copy is presented with such original chattel mortgage or other instrument of writing at the time same is filed or recorded, and not more than seventy-five cents where such copy is prepared by the county clerk. In cases where a copy of such chattel mortgage or other instrument in writing is filed in the first instance, instead of the original, the county clerk shall be entitled to charge the sum of 25 cents for certifying upon such original the fact that a true copy thereof has been duly filed, with the date of such filing, and such certificate, so indorsed upon such original chattel mortgage or other instrument of writing, shall be received in evidence as sufficient proof of the filing of a true copy of such chattel mortgage or other instrument in writing in the office of the county clerk so certifying.

The effect of these provisions may be further summarized, so far as important here, as follows:

The mortgagee may file either the original or a copy of his mortgage.

He may or may not have the filed instrument recorded.

If the original is filed, it may be withdrawn only when recorded and upon filing a true copy in its stead.

Failure to file or record the instrument renders it void as to subsequent mortgagees in good faith.

[1, 4]   If Nations desired to protect his rights as

mortgagee by complying with this law, it was his primary duty to file either the original or a copy with the county clerk. The duty to do this rested upon him, and upon no one else. Apparently he chose to avail himself of the permission given in the statute to file as a permanent record a copy instead of the original. In his letters to the clerk he stated that both the original and a copy were inclosed and requested that "one copy" be filed and the "other copy" returned. The clerk took this to mean that he was to file the copy and return the original. He did this, and since Nations received and retained the original, we conclude that the clerk correctly interpreted his intention. The original was forwarded apparently only to afford an opportunity to compare the copy. That he intended to file the copy, not the original, is further shown by his withdrawal, or at least his retention, of it, in the face of the statute, which allows the withdrawal only if it is recorded and a true copy left in its place, neither of which conditions was complied with. The statute expressly provides that the instrument filed must be retained by the clerk in the files of his office, with the exception that if the original is filed it may be withdrawn under the conditions above stated. A mere presentation to the clerk of an original mortgage, and the immediate withdrawl of it without recording, or leaving a copy in its stead, cannot be a "filing" within this statute, even though the clerk puts his file mark upon it. The word "filing" itself imports some degree of permanency. To file an instrument is to present it to the proper officer to be kept as an archive of his office. The instrument is to be permanently preserved as a public record. An instrument merely delivered to the clerk and then withdrawn without leaving a copy, affords no notice or information to persons subsequently dealing with the property affected. It follows that the fact that Nations sent the original instruments to the clerk with the copies adds noth-

ing to them. The originals were not actually filed, and were not intended to be. The attempt was to comply with this statute by the filing of the copies, and under that filing the rights of the parties must be determined.

[5] It takes no argument to demonstrate that the statute in providing that a copy may be filed instead of an original means a true copy. A copy of an instrument is a duplication or reproduction of it. We do not lay down the rule that the copy, to conform to the statute, must be an absolute duplicate in every detail, or that some discrepancies may not be disregarded, as was done in Gillespie v. Brown, 16 Neb. 457, 20 N. W. 634, and Union Stockyards Bank v. Hamilton, 246 Fed. 586, 158 C. C. A. 550, cited in appellant's brief. But certainly it must be substantially identical, and a paper which omits such essential features as the signature of the maker and the certificate of acknowledgment cannot be said to be a copy of an original which contains them.

How then has appellant complied with this statute? It provides that unless the mortgage is recorded, or it or a copy is filed, it shall be void as to subsequent mortgagees in good faith. The Nations mortgages were not recorded. The originals were not filed in conformity with the statute. No copies were filed; the instruments relied upon not being copies of anything. It follows that the statute was not obeyed, its penalty becomes effective, and the mortgages are void as against Lowenstern, who is admittedly a subsequent mortgagee in good faith.

[2] Appellant argues that the situation was caused, not through his fault, but through the negligence of the clerk, who certified that the instruments left on file were true copies of the originals, which they were not. The clerk executed a false

certificate, but that does not excuse appellant from the consequences of his own negligence. The law places a duty of filing a true copy of the mortgage upon the mortgagee, not upon the clerk, and his failure to do so is not remedied by the fact that the clerk wrongly certifies the instrument to be a copy. Cases like Case v. Hargadine, 43 Ark. 144, Covington v. Fisher, 22 Okl. 207, 97 Pac. 617, Keys & Co. v. First National Bank, 22 Ok. 174, 104 Pac. 350, 18 Ann. Cas. 152, and Dabney v. Hathaway, 51 Okl. 658, 152 Pac. 77, cited in appellant's brief, which hold that the duty of the mortgagee ceases when he delivers to the clerk an instrument properly prepared, and that he is not responsible for the neglect or omissions of the recording officer, are not in point here. In those cases the person tendering the instrument for record had done all that the law required of him. The errors or ommissions in recording were attributable to the officer only. Here appellant himself has not complied with the statute.

[3] The clerk did keep the minute book prescribed by section 5 of the act, and entered in it the required facts as to the various mortgages. Appellant claims that the information contained in this book was available to appellee, and sufficient to put him on notice. But we are dealing with constructive, not actual, notice. If it were shown that appellee saw this book and thus obtained information of the existence of the mortgages, it may be that he would be put upon inquiry to the same extent as though he received the same information from some other reliable source. We do not decide that feature in this case, for the circumstances, do not require it. In dealing with constructive notice under recording acts, we can go no further than the statute itself. It does not make this book, or the statements contained in it, constructive notice to any one,

confining that result to the filing or recording of the proper instruments, and to that alone. When such finding is lacking, constructive notice does not arise under the law. In this respect this case is similar to McBee v. O'Connell, 16 N. M. 469, 120 Pac. 734, and Vorenberg v. Bosserman, 17 N. M. 433, 130 Pac. 438, in which it was held that the recording of an instrument not entitled to record, because not acknowledged, was not constructive notice.

What has been said disposes of the only points argued in appellant's brief. It follows that the judgment of the district court should be affirmed; and it is so ordered.

RAYNOLDS, C. J., and PARKER, J., concur.